# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **TARA T. MOYER**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3076-L** |
| | § | |
| **JOS. A. BANK CLOTHIERS, INC.**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed December 17, 2012; and Defendant's Renewed Motion to Strike Summary Judgment Evidence, filed February 19, 2013. After careful consideration of the motions, response, reply, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment and **denies as moot** Defendant's Renewed Motion to Strike Summary Judgment Evidence.

## I.      Procedural and Factual Background

Plaintiff Tara T. Moyer ("Moyer" or "Plaintiff") brought this action against Defendant Jos. A. Bank Clothiers, Inc. ("JAB" or "Defendant') on November 8, 2011. Plaintiff asserts claims for gender discrimination, hostile work environment sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Moyer also asserts claims for defamation of character, intentional infliction of emotional distress, intrusion into seclusion, negligent hiring, negligent retention, negligent entrustment, self-publication; and negligent supervision and training.[1]  Plaintiff seeks compensatory and

---

[1] Plaintiff also asserts a claim for "discipline discrimination," in the workplace under Title VII," apparently on the basis that the male employees in her store allegedly "have been allowed to continue their gross and unprofessional behaviors without reprimand or termination to this date." Pl.'s Am. Compl. 1-2. To the extent that Plaintiff alleges that JAB discriminated against her on the basis of her gender in the enforcement of its policies or

punitive damages, "two times $5,162 of Texas unemployment benefits received," reimbursement for expert opinions, medical exams, and proposed medical and/or psychiatric treatment.

From December 2008 to until the spring of 2009, Moyer worked at a JAB store in Austin, Texas, as an assistant manager.  After seeking a transfer to a JAB store in Dallas, Texas, Moyer began working at a new JAB location in Frisco, Texas, as an assistant manager.  Moyer alleges that while at the Frisco store, she was harassed by Doug Cully ("Cully"), her store manager and supervisor, Ryan Hair ("Hair"), a third key,[2] and Doug Cummings ("Cummings"), a sales associate.  She further alleges that Cully and Terry Hillgartner ("Hillgartner"), the regional sales director, failed to remedy the harassment.  In May 2010, Moyer transferred to the JAB store in Addison.  According to Plaintiff, she was forced to transfer and take a demotion from the role of an assistant manager to that of a third key.  Moyer also contends that she was harassed at the Addison store by Gary McDonald ("McDonald"), an assistant manager at the Addison store, and Dane Wagner ("Wagner"), a sales associate.  She alleges that Walter Love ("Love"), the Addison store manager, failed to remedy the harassment.

While at the Addison store, Moyer received several disciplinary actions for making inappropriate comments.  During one conversation in May 2010, Wagner told Moyer that he was trying to sell his parents' older Cadillac.  In response, Moyer suggested to him to "take it to colored town" to sell it.  Def.'s App. 35.  As a result of this comment, on October 16, 2010, JAB counseled Moyer for making a "racially insensitive comment."  *Id.* at 87.  Moyer was warned

---

the disciplinary actions it took with respect to Moyer, the court construes this as a claim for gender discrimination under Title VII.  To the extent, if any, that Plaintiff is asserting claim for discrimination on the basis that, since filing a complaint of discrimination and sexual harassment with the Texas Workforce Commission ("TWC"), these male employees have not been counseled or written up for the conduct she alleged in her complaint, the court holds that such a claim for "discipline discrimination" is not cognizable under Title VII.

[2] Although this term is not defined or explained by the parties, the court understands this position to be a person who is not a manager or assistant manager but may have some supervisory responsibility or shift duty.

that if she continued to engage in such conduct she would face termination.  *Id.*  JAB counseled Moyer again on October 20, 2010, this time for using "improper language offensive to others in the store."  *Id.* at 88.  Specifically, Moyer was counseled for saying to a Jewish customer, "Man, quit trying to Jew me down.  This ain't no Mercado Juarez."  *Id.* at 37.  On December 22, 2010, John Joekel ("Joekel"), a sales associate, reported to JAB that one day, while he was folding clothes at the store, Moyer walked by and stated, "You need to get the nigger to do that."  *Id.* at 90.  Moyer could not remember the incident but later denied making the statement and asserted that Joekel misheard her.  *Id.* at 40.  Following Joekel's complaint, Hilgartner came to the Addison store and suspended Moyer with pay.  *Id.* at 41.   On December 30, 2010, JAB notified Moyer that her employment was being terminated as a result of the inappropriate racial remarks she made in violation of JAB's discrimination and harassment policies.  *Id.* at 91.

On December 17, 2012, Defendant moved for summary judgment on Moyer's claims. On January 14, 2013, Moyer filed her response and two appendices in support of her response. On January 28, 2013, Defendant moved to strike her summary judgment evidence from the record.   On January 31, 2013, Moyer responded and also requested leave of court to cure the evidentiary deficiencies in her filing.  The court granted Plaintiff leave to cure the deficiencies. On February 13, 2013, Plaintiff filed a supplemental reply to Defendant's motion and provided additional summary judgment evidence in support of her response.   On February 19, 2013, Defendant filed a renewed motion to strike Plaintiff's summary judgment evidence, wherein it asserts that Plaintiff's recent filing does not cure the deficiencies identified in Defendant's motion and moves to strike the additional documents in Plaintiff's most recent filing.

## II.    Relevant Legal Standards

### A.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

[dispute] for trial.'" *Id.* (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

 **B.** <u>**Gender Discrimination Standard for Title VII Claims**</u>

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  As Moyer offers only circumstantial evidence of discrimination, her Title VII claims are analyzed using the modified *McDonnell Douglas* burden-shifting paradigm.  *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).  To survive a motion for summary judgment under the modified *McDonnell Douglas* paradigm, a Title VII

plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of discrimination, a plaintiff must show: (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (addressing racial discrimination claim). "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that [s]he did not violate the rule or that, if [s]he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). To establish a *prima facie* case in the second manner, the plaintiff "must show that . . . employees were treated differently under circumstances 'nearly identical' to [hers]." *Id.* (citations omitted). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260 (footnotes omitted).

Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. "The burden on

the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citations and internal quotation marks omitted).   If the employer sustains its burden, the inference of discrimination disappears, and "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* (citation omitted).   "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (alteration in original) (citations and internal quotation marks omitted).

**C.     Hostile Work Environment/Sexual Harassment Standard for Title VII Claims**

A plaintiff may "establish that she was sexually harassed in violation of Title VII by proving, inter alia, that the harassment created a hostile or abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)).   To establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff

> must demonstrate that: (1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Id.*   Where the harassment is allegedly committed by a supervisor with immediate or successively higher authority over the harassment victim, the plaintiff employee need only

satisfy the first four elements previously described. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill,* 433 F.3d at 434 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration in original) (internal quotation marks omitted).   In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, the court is to look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   *Harvill*, 433 F.3d at 434 (quoting *Harris v. Forklift*, 510 U.S. 17, 23 (1993)).  Further, "'[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile [or] abusive, and subjectively offensive, meaning that the victim perceived it to be so.'" *Harvill,* 433 F.3d at 434 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

Additionally, in supervisor sexual harassment cases, if the supervisor's conduct is found to be severe or pervasive, the employer is vicariously liable unless the employer can establish both prongs of the affirmative defense set forth in *Faragher* and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).  *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (citation and footnotes omitted).  To establish the *Ellerth/Faraghe*r affirmative defense, "the employer must show that (1) the employer exercised reasonable care to prevent and correct

promptly any sexual harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Id.*

### D.    Retaliation Standard for Title VII Claims

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII.  *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation.  *Montemayor,* 276 F.3d at 692.  This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action.  *McCoy*, 492 F.3d at 557.  Once a defendant articulates such a reason, the inference of discrimination or retaliation raised by the *prima facie* showing drops from the case. *Montemayor,* 276 F.3d at 692.

At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose. *McCoy*, 492 F.3d at 557 (citation omitted). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, _____, U.S. _____, 133 S. Ct. 2517, 2533 (2013).  If the employee fails to prove, or raise a genuine dispute of material fact, that the employer's real reason is a pretext for its allegedly retaliatory conduct, the defendant is entitled to summary judgment. *See McCoy*, 492 F.3d at 561-62.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  548 U.S. 53, 64 (2006).  Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted).  In so ruling, the Court rejected Fifth Circuit authority, *id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)).  In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee

from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

### E.   Defamation Standard Under Texas Law

In Texas, a plaintiff asserting a claim for defamation of a nonpublic figure "must demonstrate that the defendant published a defamatory statement about him while acting with negligence regarding the truth of the statement." *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007).  "To recover on such a claim, the plaintiff must identify the alleged defamatory statement and the speaker." *Id.*  The claim must also "state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, *5 (N.D. Tex.), *aff'd*, 232 F.3d 210 (5th Cir. 2000).  "Courts require more particular pleading [for a defamation claim] to allow the opposing party to raise the appropriate defenses." *Id.* (imposing requirement that a plaintiff bringing a defamation claim specify the time, place, content, speaker, and listener).

### F.   Intentional Infliction of Emotional Distress Under Texas Law

Under Texas law, a plaintiff asserting a claim for intentional infliction of emotional distress "must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwan*ger, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)).  "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations and internal quotation marks omitted).  Moreover, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*  (citations

omitted).  "Given these considerations, Texas courts have held that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999) (citations omitted).  As such, "to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct," which "exists in only the most unusual of circumstances."  *Id.* at 613 (citations and footnote omitted).  "[E]xcept in circumstances bordering on serious criminal acts," conduct "will rarely have merit" as a claim for intentional infliction of emotional distress."  *Creditwatch Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005).

Accordingly, the Texas Supreme Court has repeatedly emphasized that the tort of intentional infliction of emotional distress is a "gap-filler" tort and may not be maintained as a separate claim unless "the victim has no other recognized theory of redress."  *Zeltwanger*, 144 S.W.3d at 447 (citation omitted).  "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."  *Id.* (citations omitted).

### G.      Intrusion Into Seclusion Standard Under Texas Law

The privacy tort of intrusion into seclusion protects the right to be left alone from intrusion.  To establish a cause of action for invasion of privacy for intrusion upon one's seclusion under Texas law, one must show that there was "an intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that is highly offensive to a reasonable person."  *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997).  Typically, an action for intrusion upon one's seclusion exists "only when there has been 'a

physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989) (alteration in original) (quoting *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex. App.—Fort Worth 1982, no writ).

### III.    Analysis

Defendant moves for summary judgment on Plaintiff's claims for gender discrimination, hostile work environment sexual harassment, retaliation, defamation of character, intentional infliction of emotional distress, intrusion into seclusion, negligent hiring, negligent retention, negligent entrustment, self-publication; and negligent supervision and training.   With respect to Plaintiff's Title VII claims, JAB contends that the evidence demonstrates that all of the actions it took were nondiscriminatory and nonretaliatory, and that it disciplined and terminated Moyer because of misconduct.   As for Moyer's state law claims, Defendant argues that they are unsupported by the relevant law and the facts.   Defendant asserts that it is entitled to summary judgment because Moyer cannot demonstrate that a genuine dispute of material fact exists regarding any of her claims.

### A.    <u>Title VII Claims</u>

#### 1.    *Gender Discrimination*

Defendant contends that Moyer cannot establish a *prima facie* case of gender discrimination because: (1) she cannot show that she was qualified for her position; and (2) she cannot identify any similarly situated individuals who committed the same errors but were treated differently.   Even assuming that Moyer could meet her *prima facie* burden, JAB argues that it has offered legitimate nondiscriminatory reasons for its decisions behind her discipline and termination: her violations of JAB's harassment and discrimination policies.

**Memorandum Opinion and Order - Page 13**

The court determines that Moyer has not satisfied her initial burden of establishing a *prima facie* case of gender discrimination.  Moyer does not dispute making the comments that were the subject of her first two disciplinary actions for violation of JAB's antiharassment and discrimination policies.  Defendant's summary judgment evidence establishes that it had clear antiharassment and antidiscrimination policies of which Moyer was aware.  At the time of her hire, Moyer received and read JAB's Associate Manual ("Manual"), which prohibits "not only unlawful harassment," "such as race, sex, national origin, disability, sexual orientation, age, or religion," "but also other unprofessional and discourteous actions."  Def.'s App. 67.  Moreover, Moyer signed JAB's Professional Conduct Policy And Prohibition Against Harassment ("Anti-Harassment Policy"), which states that forms of harassment include, but are not limited to, "racial or sexual epithets, derogatory slurs, off-color jokes, propositions, threats, or suggestive or insulting remarks."  *Id.* at 76.  Both the Manual and the Anti-Harassment Policy state that any associate "who engages in objectionable conduct is subject to discipline up to and including termination."  *Id.* at 69, 76.  Moyer admits to making the "colored town" and "Jew me down" comments, and, according to JAB, these comments violated both the Manual and the Anti-Harassment Policy.  Although Moyer denies the conduct underlying the third violation, she does not dispute that Joekel reported to JAB that she used the word "nigger" when referring to another coworker.  Further, she concedes that if she had made the statement as alleged, it would have been an appropriate ground for termination.  JAB states that the conduct attributed to her regarding this incident also constituted a violation of its Manual and the Anti-Harassment Policy.

Despite her admitted violations of work-place rules, Moyer nevertheless may establish a *prima facie* case by showing that other employees outside of the protected class, holding the same job or responsibilities, under the supervision of the same supervisor, and with essentially

comparable violation histories, engaged in similar acts but were not punished similarly.  This, Moyer fails to do.  She alleges, without citing to any evidence in the record that, "[a]s a woman, [she] was subject to more severe disciplinary actions for less offensive words and for something [she] did not say," and that "[w]orse actions and words have proven to be commonly acceptable for men by men."  Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. 12.  Moyer's unspecific and unsubstantiated assertions, however, are insufficient to raise a genuine dispute of material fact that she has been treated differently than any other similarly situated employee under circumstances "nearly identical" to hers.

Even assuming Moyer could establish a *prima facie* case, JAB has offered legitimate, nondiscriminatory reasons for its employment decisions.  An employee's violation of a work-rule is a legitimate, nondiscriminatory reason for termination.  *See Mayberry*, 55 F.3d at 1091 (holding that the employer discharged its burden of production regarding a legitimate, nondiscriminatory reason for terminating plaintiff when it explained that its decision was based solely on its conclusion that he violated a work rule); *see also Rochon v. Exxon Corp.*, 203 F.3d 827, at *3 (5th Cir. 1999) (per curiam) ("Violation of a work-rule is a legitimate, nondiscriminatory reason for termination.") (citation omitted).  As already noted, JAB has set forth evidence establishing that Moyer's admitted conduct and the conduct attributed to her, constituted a violation of its established antiharassment and antidiscrimination policies.  The court therefore concludes that JAB has satisfied its burden of articulating that Moyer was disciplined and terminated for legitimate, nondiscriminatory reasons, and the burden shifts to Moyer to prove that its proffered reasons are merely a pretext for discrimination.  *Mayberry*, 55 F.3d at 1091 (citation and footnote omitted).

**Memorandum Opinion and Order - Page 15**

The court determines that Moyer has not created a genuine dispute of material fact that JAB's stated reasons for her discipline and termination are pretextual.  Here, Moyer simply disputes that her conduct was not a violation of JAB's policies and that "JAB acted hastily in terminating her."  Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. 13.  According to her Response, she is "innocent" of any misconduct, because her "colored town" and "Jew me down" comments were "isolated and distinctly separate with no intention of harm or hostility to anyone."  *Id.*  Moyer's subjective belief, however, that there was "certainly nothing hostile" about her "colored town" remark or that her "Jew me down" comment was a "whitty [sic] quip" is quite beside the point because the ultimate issue in this case is whether JAB discriminated against Moyer *on the basis of her gender*—not whether Moyer's conduct should have been considered a violation of JAB's policies or JAB made correct disciplinary determinations with respect to her.  *See McVille v. Inter-Community Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) ("Most of [plaintiff's] arguments attempt to justify her conduct or explain why her termination was unwarranted . . . but the relevant issue in a Title VII case is whether an employer discriminated against its employee, not whether it made a correct disciplinary determination.") (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."); *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 278 (5th Cir. 1999) ("Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide.  The single issue for the trier of fact is whether the employer's [action] was motivated by discrimination.")).  Moreover, that Moyer maintains her

**Memorandum Opinion and Order - Page 16**

"innocence" as to the third violation is of no moment, as an "employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonable believed it and acted on it in good faith." *Cervantez v. KMGP Services Co.*, 349 F. App'x 4, 10 (5th Cir. 2009) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'").   Thus, Moyer's arguments that her conduct did not violate JAB's policies are insufficient to raise a genuine dispute of material fact as to pretext. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (noting that merely arguing that the employer made an incorrect decision or "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext").

The court therefore determines that, even assuming Moyer can establish a *prima facie* case of gender discrimination, she has not raised a genuine dispute of material fact that JAB's proffered reasons for its employment decisions are pretextual or, that its reasons, while true, are not the only reasons for its conduct, and that "a discriminatory motive more than likely motivated her employer's decision[s]." *Wallace*, 271 F.3d at 220 (citations and internal quotation marks omitted).   Accordingly, Defendant is entitled to judgment as a matter of law on Moyer's gender discrimination claim.

### 2.      *Hostile Work Environment Sexual Harassment*

JAB argues that Moyer cannot establish a *prima face* case of sexual harassment because she cannot demonstrate that: (1) any alleged conduct she complains of was based on her gender; (2) that the alleged conduct affected a term or condition of her employment; or (3) JAB knew or

should have known about the alleged conduct.  For these reasons, JAB argues that her sexual harassment claim is fatally flawed and that it is entitled to summary judgment on this claim.

In her Response, Moyer requests that the court "[p]lease refer to [her] affidavit of personal knowledge" for evidence that she was sexually harassed during her employment with JAB.  Pl.'s Resp. to Def.'s Mot. for Summ. J. 7.  It is insufficient, however, for Moyer to make a general reference to her affidavit, because, as the party opposing summary judgment, she is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim.  *Ragas*, 136 F.3d at 458.  In any event, the court agrees with Defendant that the statements Moyer relies on in her affidavit in support of this claim constitute inadmissible hearsay and may not be relied on by the court as summary judgment evidence.  *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).  Furthermore, Plaintiff's supplemental affidavit fails to cure any deficiencies raised by Defendant's hearsay objections.  Plaintiff does not argue that any recognized hearsay exceptions apply; nor does she explain why these statements do not constitute inadmissible hearsay.  Accordingly, the court will not rely on those portions of either affidavit that contain inadmissible hearsay.

Even assuming Moyer could bring forth competent evidence to support her allegations of sexual harassment, the court determines that Moyer's deposition testimony reveals that she cannot establish a *prima facie* case of sexual harassment, as she cannot show that any alleged harassment she complains of was based on her sex.  As explained by the Supreme Court, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . sex.'"  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) (alteration in original).  Thus, the "critical issue . . . is whether members of one sex

**Memorandum Opinion and Order - Page 18**

are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (citation and internal quotation marks omitted).

In her deposition, Moyer testified that she was sexually harassed by Cully, Cummings, Hair, Wagner, and McDonald. A review of her deposition testimony, however, reveals that most of the alleged conduct of these employees was not directed to Moyer specifically, much less directed towards her because of her sex.

First, Moyer testified that Cully had "anger issues," and he would "chew" her out for being late and not calling, and he would harass her by telling her "[i]t's my store. I'm going to run it my way." Def.'s App. 22-23. Moyer also testified that Cully not only yelled at her but would yell at the other employees as well, such that they "all just kind of crawled into our little shells" when he was in this mood. *Id.* at 22. Moyer specifically named Martin Espinosa, the tailor, when discussing other employees that Cully would yell at when he would get into this mood. She further asserted that she talked to Cully about being "nice to our tailor." *See id* at 23, 93. Moyer stated that Cully would yell at all of them "about our duties or about our sales or [that] something is going wrong in the store." *Id.* at 23. According to her, Cully would yell at them "two to three times a week." *Id.* Even if Cully's conduct constitutes harassment, however, the court finds that Moyer's testimony that the alleged mistreatment she received from Cully was not directed to her alone but was also directed to other male employees at the store seriously undermines her claim that she was harassed by Cully because of her sex. Moyer presents no evidence that it was sex-based harassment other than her conclusory and speculative statements in her affidavit, which postdates her deposition, that "Cully had a problem and it was directed at [her], being a woman," and, that "he did not scream at the guys or chase them into the men's room." Pl.'s Second App. 85. To the extent that Moyer's affidavit conflicts with her deposition

**Memorandum Opinion and Order - Page 19**

testimony that Cully yelled not only at her, but at the male employees as well, the court notes that this is not sufficient to create a fact issue as to whether Cully's alleged harassment of her was based on her sex. *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, [her] previous testimony.") (citations omitted).

Second, Moyer also testified that Wagner, her subordinate, harassed her by once making a lewd comment to her about "edible lube," talking to her about his boyfriend, telling her on one occasion that she "should have worn a wig today," and sent her e-mails of news clips, political views, and bodybuilders. The court similarly concludes that even if Wagner's conduct constitutes harassment, Moyer also fails to present any evidence that it was sex-based harassment, and any claim by her that it was based on her sex is undermined by her testimony that he also harassed her for things unrelated to her sex, such as her political views and work ethic, as well as her failure to know the words to a Jewish song.[3] *Id.* at 32, 45.

Third, Moyer contends that employees used the term "wife-beater" to describe an undershirt and that the use of this term is evidence of discrimination because of her gender. The term "wife-beater" is certainly not one of approbation for women, and its use is demeaning, regardless of the gender of the person using it, and demonstrates a total lack of savoir faire. The term, however, is commonly used by both males and females to describe an article of clothing, namely, a sleeveless men's undershirt. This term finds its origin in the stereotypical belief that it

---

[3] Moyer alleges that Wagner frequently talked about her "working too hard," and that Love told him, "[t]hat's how women are." As Moyer states that Love, not Wagner, made the comment regarding "that's how women are," the court finds that Wagner's comments about Moyer's work ethic were unrelated to her sex.

**Memorandum Opinion and Order - Page 20**

is primarily worn by men who beat, hit, or otherwise physically abuse their wives.  The court, however, is not convinced that references to men's undershirts as "wife-beaters" amounts to harassment on the basis of sex.

Fourth, Moyer testified that she heard Cummings and Hair use the word "bitch" at least once a week, and the word "cunt" about once every two months when referring to female customers at the Frisco store.  Moyer, however, offers no evidence that these offensive words were directed at her, much less directed at her because of her sex.

Fifth, Moyer testified that Cummings, a subordinate, made a masturbatory gesture on a single occasion while discussing a company officer's visit in her presence.  Although this is clearly inappropriate and offensive conduct in the workplace, Moyer presents no evidence that Cummings made the gesture in front of her because of her sex or gender.  That Cumming's crude gesture referenced sexual conduct does not automatically make it harassment on the basis of sex.  *See Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.").

Sixth, Moyer testified that she was harassed when assistant manager McDonald would, once a month or every two weeks, "blab all over the store, [s]ounds like they're having sex next door," when describing the sound of furniture being moved at a furniture store next door.  Moyer presents no evidence, however, that McDonald's comments, although sexual in nature, were discriminatory, much less that there were made because of Moyer's sex.  Again, that a comment made in the workplace references sexual conduct does not automatically make it discrimination or harassment because of sex.  *See id.*

Seventh, Moyer testified that McDonald would talk about taking pictures of "tits, asses, and legs" of female customers that he found attractive "around five [times], maybe" or "once or twice a month."  Moyer presents no evidence to suggest that these comments were made because of her sex.  In short, the court concludes that Moyer's allegations are insufficient to suggest that she was subjected to unwelcome sexual harassment and, that the harassment was based on her sex.

Even assuming Moyer could demonstrate that she was subject to sex-based harassment from the above-named individuals, the court determines that the incidents described, as a whole, do not rise to the level of severity or pervasiveness required to support a hostile work environment claim.  Courts determine whether an environment is sufficiently abusive to be actionable under Title VII by reviewing all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998) (citing *Faragher* 524 U.S. at 787-88); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993)).  Incidental or occasional sexual comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment.  *Butler,* 161 F.3d at 269 n.3 (citing *Faragher,* 524 U.S. at 788).  Even when a hostile environment is shown, the plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of her employment.  *Harris,* 510 U.S. at 21; *Nash,* 9 F.3d at 403.  Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged her from remaining on the job, or kept her from advancing in her career.  *Harris,* 510 U.S. at 22;

**Memorandum Opinion and Order - Page 22**

*Shepherd,* 168 F.3d at 874.  Title VII is intended only to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace."  *Shepherd,* 168 F.3d at 874; *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996).  Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance. *Weller,* 84 F.3d at 194.

The conduct Moyer complains of was not severe or physically threatening.  While Wagner's alleged comments to Moyer were crude, tactless, unprofessional and uncivil, the court does not find them to be sufficiently abusive, hostile, or severe to be actionable.  Even Moyer characterized Wagner's alleged "constant harassment" as "joking or friendly harassment." Def.'s App. 32.  Although the other conduct she complains of  "certainly could be considered insensitive, boorish, uncouth or even offensive . . . that one may be offended by a remark does not elevate the statement to the level of sexual harassment."  *Pfeil v. Intecom Telecomm.*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000) (footnote omitted).  "Title VII . . . is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Lauderdale v. Texas Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (citation and internal quotation marks omitted).  While some of the alleged conduct appears to have been more than "isolated incidents," specifically, Cumming and Hair's alleged use of the words "bitches" and "cunts," and McDonald's comments that it "sounded like they were having sex next door," the court determines that this conduct was not sufficiently severe or pervasive enough to affect the terms of or conditions of Moyer's employment, as it was not significant enough to cause her to complain about it the offending employee or report it to JAB.  In her deposition testimony,

Moyer admitted that she never asked Cummings, Hair, or McDonald to stop their offensive conduct, nor did she report their conduct to anyone in management, human resources, or legal at JAB.  Def.'s 26, 33.  Just as the mere utterance of an epithet may engender offensive feelings but will not amount to a change in the conditions of one's employment, each offhand comment above, while engendering offensive feelings in Moyer, was not sufficient to affect the conditions of her employment.  *See Shepherd*, 168 F.3d at 874 ("The mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment.") (citations and internal quotation marks omitted).  "The core component of [hostile work environment] harassment is conduct designed to undermine a woman's competence."  *Ysleta*, 161 F.3d at 270 (citations and internal quotation marks omitted).  "To be sure, sexualized comments . . . can undermine competence;" "[a] plaintiff, however, must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex, and the plaintiff[] cannot draw such a connection here."  *Id.*  Moyer testified that, despite experiencing the alleged conduct, she was nonetheless able to perform her job at both the Frisco and Addison stores.  *See* Def.'s App. 30, 34.  Specifically, Moyer indicated that she felt that she was a good employee and met all of her job requirements at the Frisco store, and she was effective as a third key at the Addison store.  *Id.*  As Moyer's ability to perform at work was not affected, the court determines that the alleged harassment was not severe or pervasive enough to support a hostile work environment claim.

The court therefore determines that Moyer fails to create a genuine dispute of material fact that she was sexually harassed with respect to the above alleged acts of harassment, as she cannot establish a *prima facie* case for hostile work environment sexual harassment based on these incidents.  Specifically, Moyer has not shown that this alleged harassment was based on

her sex, and, even assuming the alleged conduct constitutes sex-based harassment, she has not demonstrated that it affected a term or condition of her employment.  As Moyer cannot establish these two critical elements of her *prima facie* case, the court finds it unnecessary to reach Defendant's additional argument that it is entitled to summary judgment because Moyer cannot show that it knew or should have known about the alleged harassment and failed to take prompt remedial action.  Accordingly, Defendant is entitled to judgment as a matter of law on Moyer's hostile work environment claim based on these alleged acts of harassment.

Moyer also asserts another "claim" for hostile work environment, which the court finds virtually unintelligible.  Accordingly, the court has restated what it believes Moyer's contention to be in this regard, as her pleadings are by no means a model of pellucid draftsmanship.  Moyer appears to contend that she was forced to transfer with a demotion to the Addison store and that this transfer placed her in a hostile work environment that violated Title VII.  *See* Pl.'s Am. Compl. 1.  Defendant, however, did not move for summary judgment on this claim, and it remains for disposition.

### 3.   Retaliation

Moyer's Amended Complaint asserts that JAB retaliated against her by: (1) demoting and transferring her to the Addison store; and (2) threatening to terminate her witness, Gilbert Cortez, an employee who worked with her at the Frisco store.  Pl.'s Am. Compl. 1, 3.  Moyer's second retaliation claim is based on events that occurred after she was discharged by JAB in December 2010 and postdates the filing of her charge of employment discrimination with the TWC in January 2011.  Specifically, Moyer contends that JAB threatened to discharge Cortez if he cooperated with or assisted her regarding the investigation of her charge of discrimination.  Defendant only seeks summary judgment, however, on Moyer's retaliation claim and not her

postemployment retaliation claim.  The court therefore only addresses Moyer's retaliation claim for being demoted and transferred to the Addison store.

JAB contends that it is entitled to summary judgment on Moyer's retaliation claim because: (1) it is unrelated to any protected activity; (2) she cannot identify any evidence of a causal connection between any protected activity and an adverse employment action; (3) even if she could make a *prima facie* showing to support her retaliation claim, JAB terminated her for the legitimate, nonretaliatory reason that she repeatedly violated a number of its policies by making offensive comments in the workplace; and (4) she cannot establish pretext with regard to her termination.  The court agrees.

In her Amended Complaint, Moyer asserts that Hilgartner retaliated against her by approving Cully's recommendation of her transfer and demotion to the Addison store in May 2010, instead of transferring Cully.  Pl.'s Am. Compl. 3.  According to Moyer's deposition testimony, Hilgartner retaliated against her because she told him that Cully had an anger problem.  Def.'s App. 47.  Additionally, Moyer alleged for the first time, in her deposition, that she believed Cully had a "crush" on her and retaliated against her because she did not return his feelings.  *Id.* at 45.  Moyer stated that she did not have any evidence to support her belief that Cully liked her, other that "one of the other associates said they felt that he had a crush on [her]." *Id.* at 46.  Although Moyer identifies an allegedly materially adverse employment action she suffered, namely, her transfer and demotion, she fails to identify any activity protected by Title VII that she engaged in for which JAB allegedly retaliated.  Specifically, she fails to produce any evidence that she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 20003-3(a).  This failure is fatal to her retaliation claim.  The court therefore determines that Moyer fails to raise a genuine

dispute of material fact on her retaliation claim based on her demotion and transfer to the Addison store, and Defendant is entitled to judgment as a matter of law on this claim. As Defendant has not moved for summary judgment regarding Moyer's postemployment retaliation claim, it remains for disposition.

### B.   State Law Claims

#### 1.   Defamation

Moyer alleges in her Amended Complaint that she was defamed by: (1) Joekel's report of her use of the word "nigger" while referring to another employee; (2) someone named Martin's "lie[d] about her" which "marred" her personnel file; and (3) Hillgartner's investigation of her misconduct. JAB argues that summary judgment is appropriate on Moyer's defamation claim because she cannot identify a statement made by Hillgartner or "Martin" that is defamatory, and even assuming she has identified a potentially defamatory statement, she has no evidence that a defamatory statement was ever "published." Further, JAB contends that it cannot be held vicariously liable for allegedly defamatory statements.

The court agrees with Defendant that Moyer cannot make the required showing to establish a claim for defamation. Moyer fails to identify "Martin," much less identify a specific statement that he made that was allegedly defamatory. In her Amended Complaint, she refers to him as simply "Martin." In her deposition testimony, she alleges that there is an unsigned letter from "Martin somebody" in her personnel file that is "derogatory." Def.'s App. 47. When asked how did Hillgartner defame her, she responded "It's apparent in my personnel file that he consulted with other employees of color." *Id.* When asked how was this conduct defamatory, Moyer stated that "in the TWC documents, there's a letter from Gilbert Cortez whereby he states that Irene, the tailor, heard that I was using racial slurs and that I hated blacks and Hispanics."

*Id.* When asked what did this have to do with Hillgartner, Moyer stated that, "Well, [Irene] obviously found out about it from somebody." *Id.* at 47-48. Moyer testified that she had no knowledge of what Hillgartner said to any employee regarding her. *Id.* The court agrees with Defendant that such vague and speculative allegations by Moyer are insufficient to create a genuine dispute of material fact that Martin or Hillgartner defamed her. Moreover, with respect to Moyer's claim that Joekel defamed her when he reported to JAB that she used the word "nigger" when referring to another employee, even if Joekel misheard her, JAB cannot be held vicariously liable for this statement. This is so because under Texas law, an employer is only liable for the defamatory statements of its employees "if the defamation 'falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" *Crouch v. J C Penney Corp.*, 337 F. App'x 399, 402 (5th Cir. 2009) (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)). Here, there is no evidence that Joekel's report to JAB about Moyer's alleged misconduct in the workplace falls within the scope of his general authority in furtherance of JAB's business and for the accomplishment of the object for which he was hired. "The Texas Supreme Court has explained that even when an employer *requires* employees to discuss other employees in the course of workplace misconduct investigations, such discussions are not 'in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" *Crouch,* 337 F. App'x at 402-03 (citation omitted). Accordingly, "[i]f statements made by an employee to his employer about another employee as part of a *required* workplace investigation cannot give rise to defamation . . . [then the employer] cannot be liable for defamation simply because it *allowed* employees to report misconduct to HR." *Id.* at 403. The court therefore determines that Moyer fails to produce evidence creating a

genuine dispute of material fact that Martin and Hillgartner defamed her.  Even assuming Joekel

made a defamatory statement about Moyer, JAB, as a matter of law, cannot be held liable for this

statement.   Accordingly, Defendant is entitled to judgment as a matter of law on Moyer's

defamation claim.

### 2.    *Defamation By Self-Publication*

Moyer also alleges a claim for self-publication defamation on the basis that she "was

forced to tell what was said about [her] to two prospective employers and [her] current

employer" when asked about why she was no longer employed with JAB.  Pl.'s Am. Compl. 3.

In her Response, she specifies that she was forced to tell them that "an elderly gentlemen co-

worker reported [her] to have said 'let the nigger do it.'"  Pl.'s Resp. to Def.'s Mot. for Summ. J.

19.  JAB contends that Moyer cannot state a claim for self-publication defamation because she

was aware that the statements she conveyed were defamatory.  Defendant therefore argues that it

is entitled to summary judgment on this claim.  The court agrees.

To state a claim for defamation under a self-publication theory, a plaintiff "must produce

evidence showing that [s]he published the allegedly defamatory statements without an awareness

of the defamatory nature of the matter."  *Florence v. Frontier Airlines, Inc.*, 149 F. App'x 237,

240 (5th Cir. 2005); *see also Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 914 (5th Cir. 2000)

(noting that this requirement "is essential because otherwise 'the defamed party is under no duty

to mitigate its damages by refraining to self-publish known defamatory statements'") (citations

omitted).  In this case, Moyer has always maintained, beginning with her original complaint, that

Joekel's statement that she said "let the nigger do it" was defamatory.  *See* Pl.'s Compl. 2 ("John

'J.P.' Joekel, Sales Associate made false accusations about me, and thus marred my personnel

file.  I believe this to be defamation of character."); Pl's Mem. in Supp. to Amend/Supplement

**Memorandum Opinion and Order - Page 29**

Orig. Pleadings 5 ("I truthfully told them that a co-worker thought I had said 'Let the nigger do it.' Considering the fact that I am in the retail business of providing customer service, for which I was seeking employment a reasonable person would recognize that a false accusation of racist remarks/racism creates an unreasonable risk that the defamatory statement would be communicated to a third party."); Pl.'s Am. Compl. 1 ("John 'J.P.' Joekel . . . made false accusations about me. . . . My reputation has been damaged (i.e. defamation of character)."). Moyer also testified in her deposition that she knew at the time she was terminated from the company that Joekel's statement was defamatory.   Def.'s App. 52.   In Moyer's Response, however, she now contends that she was not aware of the derogatory nature of Joekel's statement "[d]uring [her] interviews in February of 2011, soon after she was terminated."   Pl.'s Resp. to Def.'s Mot. for Summ. J. 19.   Plaintiff produces no evidence to support her new position that she was not aware of the defamatory nature of Joekel's statement.   To the contrary, the record shows that Moyer was well aware of the defamatory nature of the statement.   The court therefore determines that Moyer fails to produce evidence creating a genuine dispute of material fact with respect to her defamation by self-publication claim.   Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

### 3.   *Intentional Infliction of Emotional Distress*

Defendant moves for summary judgment on Moyer's claim for intentional infliction of emotional distress on the basis that it is a "gap-filler" tort under Texas law, created to permit recovery only in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."   *Zeltwanger*, 144 S.W.3d at 447.   Thus, JAB contends that it is entitled to summary judgment on Moyer's claim for intentional infliction of emotional distress because this claim is

grounded in the same alleged work-related misconduct underlying her Title VII claims.  JAB further argues that even if Moyer's intentional infliction of emotional distress claim is not preempted, it is entitled to summary judgment because her allegations are plainly insufficient to support such a claim.  The court agrees.

In *Zeltwanger*, the Texas Supreme Court held that if a plaintiff files a claim for intentional infliction of emotional distress and for sexual harassment, and "the gravamen of the plaintiff's complaint is for sexual harassment, the plaintiff must proceed solely under a statutory claim unless there are additional facts, unrelated to sexual harassment, to support an independent tort claim for intentional infliction of emotional distress."  144 S.W.3d at 441.  This is so because when a statutory scheme makes available a remedy for essentially the same conduct as would the common law tort, there is "no gap to fill."  *Creditwatch*, 157 S.W.3d at 816.  Although *Zeltwanger* involved a workplace sexual harassment claim brought pursuant to Texas Labor Code section 21.051, this provision affords the same relief as that under Title VII for hostile work environment sexual harassment claims, and the court sees no reason why it is not equally applicable in this instance to a Title VII claim.  Thus, when a plaintiff files a sexual harassment claim under Title VII and a claim for intentional infliction of emotional distress, the court holds that she must proceed solely under her statutory claim unless she can adduce additional facts, unrelated to sexual harassment to support an independent tort claim for intentional infliction of emotional distress.

In her Amended Complaint, Moyer asserts a claim for intentional infliction of emotional distress based on her alleged mistreatment by Cully.  It is clear from her pleadings that this claim is based on the same alleged misconduct that forms the basis of her Title VII hostile environment sexual harassment claim.  Therefore, the court determines that Moyer cannot maintain a claim

for intentional infliction of emotional distress.  *See id.* at 448 ("If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes a statutory claim.").

Even assuming that Moyer can establish additional facts, unrelated to sexual harassment to support an independent claim for intentional infliction of emotional distress, the court determines that the conduct alleged here does not rise to the level of extreme and outrageous conduct required to support such a claim.  Moyer testified that Cully first harassed her about June of 2009 by telling her, during a discussion about alterations and tailoring at the store, "[i]t's my store.  I'm going to run it my way."  Def.'s App. 22.   She further described another incident where he allegedly harassed her by "chew[ing her] out for being late and not calling," "ranting and raving about how [she] need[ed] to call in and be respectful," and "chased" her into the ladies room to continue his rant.  *Id.*  Moreover, she testified that Cully would yell at her and the other employees "about our duties or about our sales or [that] something is going wrong in the store."  *Id.* at 23.   These allegations, even if combined with Moyer's allegations in support of her intrusion into seclusion claim that Cully called her before 8:00 a.m. on "several occasions whether [she] was working on not" to discuss work-related issues, do not rise to the level of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Zeltwanger*, 144 S.W.3d at 445.   Rather, Moyer complains about ordinary employment disputes to which claims of intentional infliction of emotion distress do not extend.

**Memorandum Opinion and Order - Page 32**

*GTE Sw.*, 998 S.W.2d at 612-13 (citations omitted).  Accordingly, Defendant is entitled to judgment as a matter of law on this claim.[4]

### 4.     Intrusion into Seclusion

Defendant argues that it is entitled to summary judgment on Moyer's intrusion into seclusion claim because the conduct she complains of, if it occurred, does not constitute a physical intrusion or eavesdropping on Moyer's conversation with the aid of wiretaps, microphones or spying.  The court agrees.

With respect to her intrusion into seclusion claim, Moyer was asked in her deposition whom intruded into her seclusion, and she answered, "Doug Cully."  Def.'s App. 48.  When asked how Cully did so, she responded, "Calling me in my home before 8:00 a.m., whether I had to come into work or not."  *Id.* at 49.  According to Moyer, this occurred on two or three occasions.  *Id.*  The court concludes that these calls by Cully do not include the kind of spying with the aid of wiretaps and microphones, or intrusion on private property that tortious intrusion on seclusion typically involves.  *See Cornhill*, 106 F.3d at 85 (citation omitted).  Moyer makes no such allegations in her pleadings and produces no evidence of actions on the part of Cully that

---

[4] In her Amended Complaint, Moyer also requests damages for the "intentional infliction of severe emotional distress" in conjunction with her claims for hostile work environment, intrusion into seclusion, defamation, and negligent hiring, retention, entrustment, supervision and training.  For the same reasons previously stated, Moyer cannot claim damages for intentional infliction of emotional distress in conjunction with her Title VII hostile work environment claim.  As for the damages for "intentional infliction of several emotional distress" that Plaintiff requests for her intrusion into seclusion, defamation, and negligent hiring, retention, entrustment, supervision and training claims, the court also determines that Moyer cannot claim such damages in conjunction with these torts.  This is so because the tort of intentional infliction of emotional distress is a "gap-filler" and cannot be asserted "when the risk that emotional distress will result is merely incidental to the commission of some other tort."  *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).  Further, the tort of intentional infliction of emotional distress "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines."  *Id.* (citations omitted).  Accordingly, the court concludes that Moyer is precluded from asserting claims for such damages in conjunction with these other claims.  Moreover, considering the record and evidence in the light most favorable to Moyer, the conduct she complains of in conjunction with the other remaining claims does not rise to the level of extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress.  The conduct she complains of is that attendant to an ordinary employment dispute, to which claims for intentional infliction of emotional distress do not extend.  *GTE Sw., Inc., v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999) (citations omitted).

would support a cause of action for intrusion into seclusion.  The court therefore determines that Moyer fails to create a genuine dispute of material fact with respect to her intrusion into seclusion claim, and Defendant is entitled to judgment as a matter of law on this claim.

> 5.    *Negligent Hiring, Negligent Entrustment, Negligent Retention, and Negligent Training and Supervision*

Lastly, Defendant moves for summary judgment on Moyer's negligent hiring, negligent retention, negligent entrustment, and negligent supervision and training claims.  JAB contends that each of these claims is predicated on her allegations of misconduct in the workplace and is preempted by the antidiscrimination statutes that cover such allegations.  Additionally, Defendant argues that her negligence claims are preempted by the Texas Workers Compensation Act ("TWCA").  Finally, JAB asserts that Moyer cannot create a genuine dispute of material fact regarding any negligence by JAB.

The court agrees that Moyer's negligence claims are preempted and therefore fail as a matter of law.  Moyer's negligence claims rely on the same allegations regarding Cully that serve the basis of her Title VII gender discrimination and sexual harassment claims.  In *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801-02 (Tex. 2010), the Texas Supreme Court held that an employee's claims for negligent supervision and retention based on sexual harassment are preempted by her claims under the Texas Commission on Human Rights Act ("TCHRA"), because the TCHRA provides the exclusive statutory remedy for workplace sexual harassment.  Likewise, under the same reasoning provided in *Waffle House*, Moyer's negligent training, supervision and retention claims are preempted by her Title VII claims.  *See also Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 980 (N.D. Tex. 2011) ("Moreover, Title VII preempts [plaintiff's] claim for negligent supervision and retention.").  Furthermore, with respect to

Moyer's remaining negligence claims, if they are not also preempted by Title VII, they are surely preempted by the TWCA.  The TWCA "provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997).  Because her claims are based on JAB's alleged negligence, "recovery is foreclosed by the Texas Workers' Compensation Act." *Id.* Accordingly, the court determines that Moyer's claims for negligent hiring, negligent retention, negligent entrustment, and negligent supervision and training claims must be dismissed. Accordingly, Defendant is entitled to judgment as a matter of law on these claims.

## IV.     Evidentiary Objections

Both sides lodged a number of objections to the other's summary judgment evidence. Because the court relied only on admissible evidence, it **overrules** all of Plaintiff's and Defendant's objections **as moot.**  Accordingly, the court will deny as moot Defendant's Renewed Motion to Strike Summary Judgment Evidence.

## V.     Conclusion

For the reasons herein stated, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's claims for gender discrimination; hostile work environment based on her allegations of sexual harassment by Cully, Cummings, Wagner, McDonald, and Hair; retaliation based on her demotion and transfer to the JAB Addison store; defamation; defamation by self-publication; intentional infliction of emotional distress; intrusion into seclusion; negligent hiring; negligent retention; negligent entrustment; and negligent supervision and training, and Defendant is entitled to judgment as a matter of law with respect to these claims.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment as to these claims, and they are **dismissed with prejudice**.  Moreover, because the court relied only on admissible evidence in

ruling on Defendant's Motion, it **denies as moot** Defendant's Renewed Motion to Strike Summary Judgment Evidence.  As Defendant has not moved for summary judgment with respect to Moyer's hostile work environment claim based on her transfer with demotion to the Addison store and her postemployment retaliation claim, they remain for trial or other resolution.   The court will reset the pretrial deadlines, pretrial conference and trial setting by separate order.

   **It is so ordered** this 19th day of August, 2013.


                                        Sam A. Lindsay
                                        United States District Judge