IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TARA T. MOYER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3076-L** |
| | § | |
| JOS. A. BANK CLOTHIERS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Supplemental Motion for Summary Judgment (Doc. 84), filed October 17, 2013. After careful consideration of the motion, response, reply, record, and applicable law, the court **grants** Defendant's Supplemental Motion for Summary Judgment.

## I.  Procedural and Factual Background

The court set forth the complete procedural and factual background in its last Memorandum Opinion and Order, filed August 19, 2013. The court incorporates by reference the procedural and factual background in that Memorandum Opinion and Order as if it were repeated herein verbatim. In that Memorandum Opinion and Order, the court determined that no genuine dispute of material fact existed as to Plaintiff Tara T. Moyer's ("Plaintiff" or "Moyer") claims for gender discrimination; hostile work environment based on her allegations of sexual harassment by Doug Cully, Doug Cummings, Dane Wagner, Gary McDonald, and Ryan Hair; retaliation based on her demotion and transfer to the Jos A. Bank Addison store; defamation; defamation by self-publication; intentional infliction of emotional distress; intrusion by seclusion; negligent hiring; negligent retention; negligent entrustment; and negligent supervision and training. The court also held that since

Defendant did not move for summary judgment with respect to Moyer's hostile work environment claim based on her transfer with demotion to the Addison store and her postemployment retaliation claim, both claims remained for trial or other resolution. On September 4, 2013, Defendant filed a Motion for Leave to File Supplemental Motion for Summary Judgment, which would address those two final claims. On October 16, 2013, the court granted Defendant's motion. On October 17, 2013, Defendant filed its Supplemental Motion for Summary Judgment. The court now addresses that motion as it relates to Plaintiff's two remaining claims.

## II. Undisputed Facts

The following material facts are undisputed:

1) Moyer was transferred to the Addison Jos. A. Bank store.

2) Moyer and Gilbert Cortez were coworkers.

## III. Analysis

### A. Hostile Work Environment Claim Based on Transfer with Demotion to Addison Store

In her Amended Complaint, Plaintiff discusses a hostile work environment twice. The first reference is when she states that she "was forced to transfer with demotion to the Addison Store (i.e. tangible employment action)" and that she "believe[d] this to be Hostile Work Environment under Title VII." Pl.'s Am. Compl. 1. The court previously stated that this claim for hostile work environment was virtually unintelligible[1] but determined that since Defendant did not move for

---

[1] The court notes that Plaintiff takes umbrage to the term "unintelligible." The court's point was that Plaintiff's argument did not make sense legally and that it was unintelligible from a legal standpoint. The court's word choice has no reflection on Plaintiff's intellectual ability. The court, however, does not retreat from its characterization of Plaintiff's pleadings. Moreover, with no headings and no structure, Plaintiff's response is quite difficult, if not impossible, to follow. It puts the court in the mind of trying to drive across Texas with no road signs, markers, or directions. Thus, the court has undertaken a colossal effort to wade through the morass.

summary judgment on this claim, it remained for disposition. The second reference to a hostile work environment was when Plaintiff set forth the "[c]harges of [v]icarious [l]iability for the hostile work environment based on sexual harassment which culminated in a Tangible Employment Action (i.e. being transferred and demoted to Department Manager of the Addison store.)." *Id*. at 2. The court determined that Defendant was entitled to judgment as a matter of law on this claim. While these are arguably two different claims, they are certainly related. The court previously determined that, even assuming Moyer could demonstrate that she was subject to sex-based harassment from the individually-named employees, the incidents described, as a whole, do not rise to the level of severity or pervasiveness required to support a hostile work environment. The court stated the full standard for hostile work environment claims in its previous Memorandum Opinion and Order and incorporates that standard as if it were repeated herein verbatim. The court applied this standard to determine that Plaintiff was not subjected to a hostile work environment at the Frisco store or when she transferred to the Addison store. Defendant therefore argues that Moyer cannot now establish that the transfer itself constitutes a hostile work environment. As Defendant points out, "[h]ostile work environment claims are different in kind from discrete acts" and that "[t]heir very nature involves repeated conduct." Def.'s Br. in Supp. of Its Supplemental Mot. for Summ. J. ("Def.'s Supplemental Mot.") (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).

In her response to Defendant's Supplemental Motion for Summary Judgment, Plaintiff admits that Doug Cully's "coercing or forcing [her] to transfer was the <u>culmination,</u> or peak, or summit/result of all of the other sexually intimidating, ridiculing, spewing, screaming hostile behaviors he expressed to [her], being a woman of which [she] had complained." Pl.'s Supplemental Br. in Supp. of Resp. to Def.'s Supplemental Mot. for Summ J. 3 ("Pl.'s Resp.") (emphasis in

**Memorandum Opinion and Order - Page 3**

original). In other words, Plaintiff contends that the transfer itself was not the only incident that makes up this hostile work environment claim. The court, however, has already examined all of the allegations offered by Plaintiff as they relate to Doug Cully and all of the other individually-named employees and determined that Moyer failed to create a genuine dispute of material fact that she was sexually harassed, as she could not establish a *prima facie* case of hostile work environment sexual harassment based on these incidents. The court's determination remains the same with respect to Plaintiff's second hostile work environment claim, as Plaintiff explains that the transfer was simply a culmination of all of the other incidents the court has already reviewed. For these reasons, the court determines no genuine dispute of material fact exists as to this second hostile work environment claim, and Defendant is entitled to judgment as a matter of law on this claim.

  **B.**  **Postemployment Retaliation Claim**

Moyer's Amended Complaint asserts that Defendant retaliated against her by: (1) demoting and transferring her to the Addison store; and (2) threatening to terminate her witness, Gilbert Cortez ("Cortez"), an employee who worked with her at the Frisco Store. Pl.'s Am. Compl. 1, 3. The court previously addressed Plaintiff's retaliation claim for being demoted and transferred to the Addison store and determined that she failed to raise a genuine dispute of material fact, and that Defendant was entitled to judgment as a matter of law on this claim. The court stated that Defendant had not moved for summary judgment regarding Moyer's postemployment retaliation claim and stated that it remained for disposition. The court will now address the postemployment retaliation claim. Plaintiff states that:

> After filing charges of sexual harassment and discrimination under Title VII of the Civil Rights Act of 1964 February 28, 2011 and receiving Dismissal and Notice of Rights from the EEOC mailed August 10, 2011, I subsequently learned on Oct. 21, 2011 that

**Memorandum Opinion and Order - Page 4**

> Regional Sales Director for Jos. A. Bank, Terry Hillgartner and Plano Store Manager, Ken "Sayfi" had threatened my witness, Gilbert Cortez that he would be "fired on the spot" if he cooperated in my defense during the investigation and was forced to write and sign a letter to "cover his ass."

Pl.'s Am. Compl. 1. Defendant contends that Moyer offers no evidence that Hillgartner threatened Cortez. Additionally, Defendant argues that even if there is evidence that Hillgartner or Sayfi threatened Cortez, Moyer's postemployment retaliation claim does not survive summary judgment, since courts recognize third-party retaliation claims in only limited circumstances. The court stated the full standard for retaliation claims in its previous Memorandum Opinion and Order and incorporates that standard as if it were repeated herein verbatim.

A plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks and citation omitted). While the court realizes that the term "materially adverse employment action" is incapable of a precise definition, the definition or concept set forth by the Supreme Court is amorphous and causes undue confusion to district courts that frequently deal with Title VII retaliation claims. There is a giant chasm between an "ultimate employment decision" (hiring, granting leave, discharging, promoting, and compensating) and the "petty slights, minor annoyances, and simple lack of good manners," which the Supreme Court held will not deter or dissuade a reasonable employee from making or supporting a charge of discrimination. The test enunciated by the Supreme Court is better understood as follows: whether the conduct by an employer would have a chilling or discouraging effect on a reasonable person's decision to file or support a claim of discrimination.

**Memorandum Opinion and Order - Page 5**

Defendant contends that Moyer has offered no evidence that her relationship with Cortez was sufficiently close that a threat to Cortez's employment could meet the *Burlington* "materially adverse employment action" standard. The court agrees. The United States Supreme Court has declined to identify a fixed class of relationships for which third-party reprisals are unlawful. *Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 868 (2011). The Court has, however, stated that firing a close family member will almost always meet the *Burlington* standard, but inflicting a milder reprisal on a mere acquaintance will almost never do so. *Id*. In her response, Moyer states that Cortez was her friend, associate, and designated witness.[2] Pl.'s Resp. 8.

In its Appendix in Support of Plaintiff's Response to Defendant's Summary Judgment, Moyer includes a letter written by Cortez. In her response to Defendant's Supplemental Motion for Summary Judgment, Moyer states that reading this letter "would cause anyone of average intelligence to conclude that Cortez'[s] choice of words is highly contaminated with coercion in his effort to save his job . . . ." Pl.'s Resp. 7. On April 26, 2011, Cortez wrote:

> I'm appalled to inform you that without my knowledge or permission, former Jos A Bank manager, Mrs. Tara Moyer[,] named me and two more other employees as witnesses in a complaint she has filed with the TEXAS WORKFORCE COMMISSION. I don't have any idea

---

[2] In her response, Plaintiff continuously contends that the retaliation was directed at her and that this is therefore a first-party reprisal. She contends that while Defendant attempts to define her relationship with Cortez as merely friendly, the retaliation that she has complained of "is to [her]." She then states that *she* was not dissuaded by Defendant, but that Cortez was. Plaintiff, however, misses the point. The relationship between Moyer and Cortez matters because the court must decide whether the threats to Cortez would have dissuaded a reasonable worker (like Moyer) from making or supporting a charge of discrimination. In its efforts to make that determination, the court must determine the type of relationship between Cortez and Moyer. If they have a close relationship, then Moyer would care more about how Cortez is treated, and the actions taken against Cortez would have more of an impact on her. If Moyer and Cortez do not have a close relationship, the threats against Cortez may not deter Moyer (or a reasonable person in her position) from making a charge of discrimination.

Additionally, Moyer and Cortez both state that the allegation that they were having an affair was a rumor. The court will therefore operate under the understanding that there was no romantic involvement between Moyer and Cortez.

> of any of her issues whatsoever or why she selected the Hispanic surnames; EDGAR CORREA, MARTIN ESPINOZA AND GILBERT CORTEZ, as witnesses in her complaint. I had an absolutely working only relationship with Mrs. Tara Moyer, as my immediate supervisor at our Jos A Bank store in Frisco and during the period of time of which the store was opened for business and until my transfer at your store, as you know. Clarifying this matter is very important to me. As a career professional and a loyal member of Jos A. Bank, which has given m[e] so many opportunities and not only a fine job, but career advancement and management promotion, I envision a great future with the company. Also as a result of Mrs. Tara Moyer['s] unauthorized actions, I will seek immediate response from TWC, investigators to remove my name off Mrs. Moyer['s] complaint.

Pl.'s App. to Def.'s Mot. for Summ. J. 78. In his affidavit from January 2013, Cortez states that he was told he would be fired on the spot if he cooperated in Moyer's case of discrimination. *Id*. at 118. He stated that his boss and store manager, Ken Sayfi, directed and coerced him into writing the letter discussed above. *Id*. Cortez stated that he was demoted to third key and then later to a sales associate position. *Id*. at 118-19. He stated that he received no recognition, gratitude, or compensation, and that his hours were cut. *Id*. at 119. Cortez also stated that but for Ms. Moyer listing him as a witness, he would not have been treated this way. *Id*. Finally, he stated that he contacted Moyer and apologized for not cooperating more in her defense. *Id*.

In Plaintiff's Appendix in Support of her Response to Defendant's Supplemental Motion for Summary Judgment, Moyer includes an interview of Cortez with the Texas Workforce Commission conducted in June 2011. Cortez states that he thought he was demoted because he sent a memorandum to the store manager about Moyer and copied the Regional Director and Human Resources. Pl.'s App. in Supp. of Resp. to Def.'s Supplemental Mot. for Summ. J. 8.[3] Cortez stated

---

[3] Plaintiff's Appendix in Support of Her Response to Defendant's Supplemental Motion for Summary Judgment does not contain page numbers.

**Memorandum Opinion and Order - Page 7**

that he did not know that Moyer named him as a witness until after he sent the memorandum. *Id*. He also stated that he was told that the reason for his demotion was due to issues arising from a tuxedo rental. *Id*.

Even accepting all of Plaintiff's evidence as true, the court determines that the alleged threats and demands imposed on Cortez do not define a materially adverse action that would dissuade a reasonable worker from making or supporting a charge of discrimination.[4] Moyer states that she and Cortez were friends for less than a year (March 2009 to February 2010).[5] Pl.'s Resp. 2. Plaintiff and Cortez were coworkers and, at one point, Plaintiff was Cortez's supervisor. The court determines that there is not enough evidence to prove or raise a genuine dispute of material fact that Cortez and Plaintiff had a strong enough relationship to where a reasonable person in Plaintiff's position would be dissuaded from pursuing a discrimination claim if Cortez were threatened. Moyer and Cortez were not family members, and were not in a dating relationship or any other type of close relationship that would be covered by Title VII's prohibition on retaliatory conduct. They worked with each other for less than a year. There is no evidence proving that they had spent time together outside of work. There is no evidence that Plaintiff knew any personal information about Cortez. Finally, the only evidence of Cortez knowing something personal about Moyer was found when he said that she was a "very helpful person," "always working hard," "a very dignified person, fair and

---

[4] In her Amended Complaint, Plaintiff identifies the alleged retaliatory acts as (1) the alleged threat to Cortez that he would be fired on the spot if he cooperated with her defense during the investigation, and (2) that he was allegedly forced to write and sign a letter to "cover his ass." The court's analysis of whether material adverse employment action occurred is limited to these allegations.

[5] Similar to the amorphous definition of "material adverse employment action" provided by the Supreme Court, the term "friend" is not susceptible to a precise definition.

**Memorandum Opinion and Order - Page 8**

has integrity," and "a nice person." Pl.'s App. in Supp. of Resp. to Def.'s Supplemental Mot. for Summ. J. 8.

Defendant contends that the retaliation claim Moyer articulates in her pleadings is not based on the alleged threat to Cortez's employment but rather its alleged impact on the investigation of Moyer's administrative charge since Cortez did not provide additional information. In other words, Defendant contends that the adverse employment action was not the actual demand or threat to Cortez but rather was the effect that the threat and demand had on Cortez and the investigation. The court disagrees and determines that the alleged adverse employment action is the alleged threat to Cortez and the demand that he write a letter. The consequences that could come from that threat and demand are endless, wide-ranging, and completely out of the employer's control. If the court were required to consider all of the consequences of particular employer actions and was then required to decide whether those consequences would prevent a reasonable person from pursuing a discrimination claim, the court's resources would be exhausted. For example, if an employer fires an employee's friend who also works in the company as a form of retaliation for the plaintiff's protected activity, that termination is considered the adverse employment act. If the fired friend is then unable to pay the mortgage on his home and a foreclosure occurs, the court is not required to consider those details in deciding whether the alleged adverse employment action would prevent a reasonable person from pursuing a discrimination claim. Therefore, the court need not concern itself with whether the threats or demands prevented Cortez from talking or whether the Texas Workforce Commission's investigation was affected by the noncooperation of Cortez.

**Memorandum Opinion and Order - Page 9**

For these reasons, Moyer has failed to create a genuine dispute of material fact as to this postemployment retaliation claim, and Defendant is entitled to judgment as a matter of law on this claim.

## IV. Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's second hostile work environment claim and her postemployment retaliation claim. Defendant is therefore entitled to judgment as a matter of law on these claims. Accordingly, the court **grants** Defendant's Supplemental Motion for Summary Judgment and **dismisses with prejudice** this action. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 25th day of April, 2014.

Sam A. Lindsay
United States District Judge